**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

DAVID P. MOORE, SR. PLAINTIFF
ADC # 112305

v. 4:13CV00594-JLH-JJV

ANDY SHOCK,
Sheriff, Faulkner County; *et al.* DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I. INTRODUCTION

Plaintiff, David Moore, was an inmate at the East Arkansas Regional Unit (EARU) of the Arkansas Department of Correction. From July 9, 2013, to September 26, 2013, due to prison overcrowding, he was housed at the Faulkner County Detention Center (FCDC) (Doc. No. 2 at 4). He filed a *pro se* Complaint (Doc. No. 2) pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights. He subsequently filed an Amended Complaint and Second Amended Complaint (Doc. Nos. 6, 14). Now, Defendants have filed a Motion for Summary Judgment ("Motion") (Doc. No. 72).[1] Plaintiff has not responded and the matter is ripe for a decision.

## II. BACKGROUND

Three inmates escaped from the FCDC on August 17, 2013 and, in so doing, damaged the

[1]Defendants' Motion seeks dismissal of all claims against Faulkner County, Seth Ferguson, Jonathan Fuentes, John Randall, Andy Shock, and Lloyd Vincent (Doc. No. 72). Defendants Michael Rainwater and Rainwater, Holt, & Sexton were previously dismissed from this lawsuit (Doc. No. 67).

recreation yard fence (Doc. No. 74, Ex A at ¶ 6). Upon discovery of the escape, the facility entered lock down (Doc. No. 74, Ex A at ¶ 7). It is undisputed that several inmate privileges were suspended as part of the lock down, including television, telephone, and visitation (*Id*. at ¶ 8). Plaintiff states commissary and outdoor recreation privileges were also suspended after the escape (Doc. No. 14 at 3). Defendants deny the escape affected the receipt of commissary (Doc. No. 74, Ex A at ¶ 10). They also contend that outdoor recreation was suspended only so that repairs could be performed on the fence (*Id*. at ¶ 15). Plaintiff alleges the suspension of the aforementioned privileges violated his due process rights (Doc. No. 6 at ¶ 21).

Plaintiff also alleges that his outgoing and incoming mail was intercepted and read before being delivered (Doc. No. 14 at 11-13). Specifically, he claims that a letter addressed to a private attorney was read by Defendant Seth Ferguson (*Id*. at 11). Thereafter, Plaintiff claims he was warned that all of his outgoing legal mail would be read and, depending on its contents, forwarded to Defendant John Randall for an ultimate determination as to whether it should be mailed (*Id*.). A subsequent mailing to the same attorney allegedly prompted a warning from Defendant Jonathan Fuentes that Plaintiff's letter would be screened for "key words and phrases" which, if detected, would require the letter to be forwarded to Defendant Randall (*Id*. at 12). Lastly, Plaintiff alleges that a § 1983 packet addressed to him from this Court was delivered to him already opened with filing instructions and *in forma pauperis* materials missing (*Id*.). Plaintiff alleges these actions violated his constitutional rights by denying him access to the courts (Doc. No. 6 at ¶ 23).

Finally, Plaintiff alleges that Defendant Andy Shock told inmates after the escape to "enjoy the blended meals" (Doc. No. 2 at 5). This is Plaintiff's only allegation of personal involvement against Defendant Shock and Plaintiff does not state what constitutional right was at stake by

Shock's statement.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV. ANALYSIS

Pursuant to the Brief supporting their Motion, Defendants argue (1) there is no liability against any Defendant in his official capacity; (2) they are entitled to qualified immunity; and (3) Plaintiff's claims for compensatory damages fail in the absence of a showing of physical injury (Doc. No. 73). The Court will examine each argument in turn.

**A. Official Capacity Claims**

Plaintiff sues all Defendants in both their official and personal capacities (Doc. No. 2 at 2). It is well established that a suit against a state or municipal officer in his or her official capacity is akin to a claim against the entity for which that officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, Defendants are correct in concluding that Plaintiff's official capacity claims against all Defendants are equivalent to claims against Faulkner County itself.

While sovereign immunity protects state entities from suit under § 1983, a municipal entity may be held liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (U.S. 1978). Liability may also attach where a violation can be shown to have resulted from an unofficial "custom" or deliberately indifferent failure to train or supervise. *Atkison v. City of Mt. View*, 709 F.3d 1201, 1214 (8th Cir. 2013).

In the present case, Plaintiff implicates Faulkner County policy only by way of a § 1983 conspiracy claim which alleges that the county conspired with private attorneys to foment a policy which unconstitutionally curbed inmate lawsuits (Doc. No. 14 at 15). In determining that Defendants Michael Rainwater and Rainwater, Holt, & Sexton were entitled to dismissal, the Court found that the policy in question sought to preclude only "harassing lawsuits" (Doc. No. 64 at 5). The Court then stated that there is no constitutional right to file "harassing lawsuits" (*Id.*). While the Court ultimately dismissed the Rainwater Defendants, it did not actually dismiss all of Plaintiff's claims related to the policy in question. Defendants have not addressed those claims in their present Motion or its accompanying brief. Nevertheless, given that the policy does not violate any of Plaintiff's

constitutional or statutory rights, the Court finds it appropriate to dismiss those claims as they relate to Faulkner County.

**B. Qualified Immunity**

Defendants argue they are entitled to qualified immunity on Plaintiff's suspension of privileges and mail claims (Doc. No. 73 at 3). Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

1. Television and Telephone Privileges

Plaintiff alleges that the temporary suspension of his television and telephone privileges after an inmate escape from FCDC violated his due process rights (Doc. No. 6 at ¶ 21). Defendants contend that, in order to establish a violation of his due process rights, Plaintiff must show that the revocation of privileges was undertaken as punishment and not for some other, legitimate governmental purpose (Doc. No. 73 at 4). In doing so, Defendants presume that Plaintiff is entitled to a pretrial detainee's due process protections, rather than those of a convicted prisoner. A pretrial detainees' due process rights are violated when he is subjected to "punishment" prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). However, since not every disability imposed during pretrial detention amounts to 'punishment' in a constitutional sense, courts must determine whether the restriction in question is reasonably related to a legitimate governmental objective. *Id*. at 539. If such a legitimate governmental objective can be established, the restriction, absent an express punitive intent on the part of prison administrators, does not amount to 'punishment'. *Id*.

By contrast, a convicted prisoner's due process rights are implicated where a prison restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Per his Complaint, Plaintiff states he was incarcerated in FCDC on a six month sentence for violating his parole (Doc. No. 2 at 4).[3] It

[3]He claims he was a state prisoner, but was serving his time in the FCDC due to prison overcrowding. (Doc. No. 2 at 4).

necessarily follows, then, that Plaintiff had already been convicted of an offense, paroled, and then re-incarcerated based on that earlier conviction. Based on this information, the Court believes that the *Sandin* test is the proper analysis by which to evaluate Plaintiff's due process claims.

Under the *Sandin* test, the Court finds that the suspension of Plaintiff's television and telephone privileges does not rise to the level of an "atypical and significant hardship." Indeed, courts have held that confinement to punitive isolation and the resultant loss of mail, visitation, commissary, and personal possession privileges did not rise to such a hardship. *See Kennedy v. Blankenship*, 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996). The Court therefore finds that Defendants are entitled to qualified immunity on Plaintiff's due process claims arising from the suspension of his television and telephone privileges.

Even if the Court were to evaluate these claims under the *Bell* standard, Defendants would still be entitled to summary judgment. Defendants argue that television and telephone privileges were temporarily suspended after the inmate escape for security reasons. They offer the affidavit of Defendant Randall which states that the aforementioned privileges were suspended in order to prevent other inmates from communicating with the escapees or learning of the specific vulnerability which permitted the escape (Doc. No. 74, Ex A at ¶ 8). Defendant Randall's affidavit also affirms the suspension of these privileges was not intended for punitive purposes (*Id*. at ¶ 9). Finally, they argue Plaintiff was permitted to maintain contact with the "free world" via the mail system while television and telephone privileges were suspended (*See* Doc. 74, Ex. A-3).

Defendants have provided significant evidence that the privilege suspensions were undertaken not to punish, but to mitigate security risks. Plaintiff has failed to respond with contradictory evidence. In the absence of such evidence, the Court is inclined to show deference to

the FCDC prison administrators and the steps which they believed were reasonably necessary to maintain institutional security. It notes that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Hewitt v. Helms*, 459 U.S. 460, 474 (1983), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472, 484 (1995). Defendants are, therefore, entitled to qualified immunity on Plaintiff's due process claims for the suspension of his television and telephone privileges under a *Bell* analysis.

2. Commissary

Plaintiff alleges he was denied commissary without due process after the escape (Doc. No. 2 at 5-6). Defendants argue that Plaintiff is mistaken and the escape did not affect his commissary orders. As evidence, they offer Plaintiff's commissary records (Doc. No. 74, Ex. A-4). They also offer the affidavit of Defendant Randall which states that commissary orders are delivered once per week (*Id*., Ex. A at ¶ 10). A review of Plaintiff's commissary records indicates, as Defendants suggest, that an order was delivered to Plaintiff on August 14, 2013 - three days before the escape (*Id*., Ex. A-4 at 1). The same records evidence another order delivered to Plaintiff a week later, on August 21, 2013 (*Id*.). Plaintiff has not responded to or otherwise contradicted this evidence. Accordingly, the Court finds that Plaintiff's commissary claims fail to establish a constitutional violation and, therefore, Defendants are entitled to qualified immunity on those claims.

3. Outdoor Recreation

Plaintiff alleges he was denied outdoor recreation for forty days after the escape (Doc. No. 2 at 5-6). He claims this denial was a violation of his due process rights (*Id*.). Defendants argue that outside recreation was suspended until October 4, 2013, so that repairs to the fence could be completed (Doc. No. 74, Ex. A ¶ 15). They state that during the repair period, Plaintiff and other

inmates were given an opportunity to exercise in the FCDC dayrooms. (*Id*. at ¶ 17). Based on Plaintiff's indoor exercise opportunities, they contend the temporary suspension of outdoor recreation does not give rise to a constitutional violation.

Pursuant to the *Sandin* test, the Court finds the loss of outdoor recreation for forty days does not represent an "atypical and significant hardship." *See Thomas v. Ramos*, 130 F.3d 754, 762 (7th Cir. 1997) (holding that the loss of outdoor exercise privileges for two months did not represent an "atypical and significant hardship"). Plaintiff does not allege he was prevented from exercising or engaging in all recreational activities. Instead, he argues only that he was denied the opportunity to do so outdoors in the recreation yard. No due process right is implicated in the suspension of this privilege.

Plaintiff's claim also fails under the *Bell* test. Defendants have argued that the suspension of outdoor recreation was necessary in order to effect repairs in the yard (Doc. No. 74, Ex. A ¶ 15). Plaintiff has failed to provide any contradicting evidence which suggests that the suspension of the privilege was intended as punishment. As such, no due process violation is implicated.

Based on the foregoing, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's due process claims which relate to the suspension of his outdoor recreation privileges.

    4.    Mail

Plaintiff alleges that Defendants intercepted and read his outgoing and incoming mail (Doc. No. 6 at ¶ 9, 10, 11, 13, 14), and this interception of his mail violated his constitutional right to access the courts (*Id*. at ¶ 23). Defendants argue that Plaintiff's claim must fail insofar as he cannot provide proof that he witnessed any of the named Defendants reading his outgoing mail.

Before reaching the question of whether Plaintiff can prove that Defendants read his outgoing

mail, the Court turns to the substance of Plaintiff's access to courts claims. An access to courts claim requires a plaintiff to establish an actual injury resulting from the alleged denial of access. *See Hartsfield v. Nichols*, 511 F.3d 826, 831-32 (8th Cir. 2008). An inmate sustains an actual injury when a non-frivolous claim has been frustrated or impeded. *Id*.

Here, Plaintiff does not describe how the Defendants' alleged actions actually hampered his attempt to bring this or any other suit. He states he was warned on two occasions by Defendants Ferguson and Fuentes that his mail would be read and, if necessary, submitted to Defendant Randall for a decision on whether to mail it (Doc. No. 6 at 5-6).[4] Plaintiff does not allege, however, that any Defendant actually prevented the relevant letters from being mailed. Similarly, Plaintiff alleges that a mailing to this Court - a request for a § 1983 packet - was submitted to the prison mail room on August 30, 2013, but not sent as of September 9, 2013 (*Id*. at 4). Plaintiff does not allege which Defendant was responsible for this delay. Nor does he specify what injurious effect the alleged delay had on this or any other action. Lastly, he claims that he eventually received a § 1983 packet, but the staples had been removed and several critical pages were missing (*Id*. at 5). Again, Plaintiff does not

---

[4]The United States Court of Appeals for the Eighth Circuit has found that, in some circumstances, the taking of legal papers interferes with an inmates's right of access to the courts. *See Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001); *Goff v. Nix*, 113 F.3d 887 (8th Cir. 1997). In those cases, however, the plaintiffs alleged specific injuries arising from the confiscation or interception of their legal papers. In *Cody*, the plaintiff alleged the defendants obtained an unfair advantage in defending his claims by reading his legal papers. *Cody*, 256 F.3d at 768. In *Goff*, the plaintiffs alleged that legal documents were actually lost when a "jailhouse lawyer" was transferred and prison officials refused to allow the return of documents via legal correspondence between inmates. *Goff*, 113 F.3d at 891-892.

By contrast, in the present case Plaintiff does not allege any actual injury to his litigative efforts resulted from the interception of his legal mail. He merely alleges that Defendants threatened to examine his mail and threatened to refuse to mail it. He does not allege they actually made good on either threat.

allege which Defendants was responsible for the packet's condition, nor does he allege he suffered an actual injury as a result of the damaged packet.[5]

It is not enough for Plaintiff to vaguely allege that his attempts to bring a claim were impeded and frustrated. Such pleading by labels and conclusions will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. 2007). Plaintiff was required to specify exactly how the alleged mail interceptions and delays frustrated a non-frivolous claim. He has failed to do so. Based on the foregoing, the Court finds that Plaintiff has failed to allege a constitutional violation based on Defendants' interception and delay of his mail. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's mail claims.

5. Blended Meals

Plaintiff alleges that on the day of the escape, Defendant Shock addressed the inmates of the FCDC and told them to "Enjoy the blended meals" (Doc. No.2 at 5). Plaintiff does not allege that he ever received a "blended meal." As Defendants correctly point out, mere verbal threats by a state do not establish a cognizable § 1983 claim. *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). While the alleged threat, if true, might be unprofessional, it is not a violation of Plaintiff's constitutional rights. Defendant Shock is therefore entitled to qualified immunity on this claim.

## V. CONCLUSION

The Court notes that Defendants also argue Defendant Shock had no personal involvement beyond the "blended meals" threat and, more generally, Plaintiff has failed to allege any actual

[5]Plaintiff does state that he "gave up the hope" of vindicating his due process rights against Defendant Shock due to the alleged actions of the Defendants in intercepting his mail (Doc. No. 6 at ¶ 15). In that same Complaint, however, Plaintiff alleges Defendant Shock took deliberate steps to violate his due process rights and he is, therefore, entitled to relief (*Id*. at ¶ 21).

physical injury which would justify his request for compensatory damages. The Court finds it unnecessary to reach those arguments since it has already determined that Plaintiff's official capacity claims should be dismissed and that Defendants are entitled to qualified immunity on all other claims. Based on the foregoing, the Court finds that Defendant's Motion should be granted and Plaintiff's Complaint dismissed with prejudice.

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. No. 72) be GRANTED;

2. Plaintiff's Complaint be dismissed with prejudice;

3. The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

IT IS SO RECOMMENDED this 7th day of October, 2014.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE